**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| GARCIA RAYMOND SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV93 |
| | ) | |
| J.P. MCCLASKEY, DET. K. | ) | |
| CHILDERS, SIX UNKNOWN POLICE | ) | |
| OFFICERS, and DET. GONSALEZ, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This case comes before the Court for rulings on Defendants'
Motion to Dismiss (Docket Entry 14), as well as Plaintiff's Motion
for Leave to File Third Amended Complaint (Docket Entry 27), Motion
for Subpoena or Order (Docket Entry 30), Letter Motion seeking an
update on other filings (Docket Entry 32 at 1), Fourth Motion to
Amend Complaint (Docket Entry 33),[1] and Letter Motion asking that
the Court "look at [Defendant J.P.] McCl[a]skey's record and the
department's record" (Docket Entry 36 at 1). (<u>See</u> Docket Entries
dated Nov. 16, 2012, Jan. 3, 2013, Feb. 8, 2013, Apr. 1, 2013,
Sept. 13, 2013, and Dec. 31, 2013; <u>see also</u> Docket Entry dated Jan.
27, 2012 (assigning case to undersigned Magistrate Judge).)[2]  For
the reasons that follow, Plaintiff's Motion for Leave to File Third

_____

[1]     The Court refers to this untitled Motion as Plaintiff's
Fourth Motion to Amend Complaint due to its content.

[2]     The Parties have consented to disposition of this case by
a United States Magistrate Judge.  (Docket Entry 31.)

Amended Complaint will be granted, Defendants' Motion to Dismiss will be granted in part and denied in part, and Plaintiff's other Motions will be denied.

## I.  Procedural Background

Plaintiff commenced this case by filing a pro se prisoner form Complaint under 42 U.S.C. § 1983 alleging generally that Defendants violated various of his constitutional rights in connection with a search, seizure, and subsequent detention. (Docket Entry 2.)  He thereafter filed an Amended Complaint.  (Docket Entry 4.) Defendants answered the Amended Complaint (Docket Entry 13) and filed the instant Motion to Dismiss (Docket Entry 14), to which Plaintiff responded (Docket Entry 26).[3]  On the same day he made that response, Plaintiff filed his instant Motion for Leave to File Third Amended Complaint (Docket Entry 27), to which Defendants responded (Docket Entry 28).  Plaintiff subsequently filed his other instant Motions.  (Docket Entry 30, 32, 33, and 36.)

Plaintiff's proposed Third Amended Complaint alleges the following eight claims: (1) "Violation of Civil Rights Pursuant to [T]itle 42 U.S.C. 1983 [(]General Allegations[)]" (Docket Entry 27-1 at 12-13); (2) "Violation of Civil Rights Pursuant to Title 42 U.S.C. 1983 (Failure to Implement Appropriate Policies Customs and Practices" (id. at 13-14); (3) "Violation of Civil Rights Pursuant

_____

[3]     Before Defendants answered, Plaintiff filed a Second Amended Complaint (Docket Entry 7), which the Court struck as unauthorized (see Text Order dated Aug. 8, 2012).

to Title 42 U.S.C. 1983 [](Use of Excessive Force)[]" (id. at 14-15); (4) "Violation of Civil Rights Pursuant to Title 42 U.S.C. 1983 Duty to Intervence [sic]" (id. at 15-16); (5) "North Carolina Common Law [] Negligence []" (id. at 16); (6) "North Carolina Common Law [] Negligent Supervision []" (id. at 16-17); (7) "North Carolina Common Law [] Conspiracy []" (id. at 17-18); and (8) "North Carolina Common Law [] Assault []" (id. at 18-19).[4]

## II.  Motion for Leave to File Third Amended Complaint

Given the procedural posture of this case, Plaintiff may "amend [his] pleading only with [Defendants'] written consent or the [C]ourt's leave."  Fed. R. Civ. P. 15(a)(2).  The applicable Rule further directs that "[t]he [C]ourt should freely give leave when justice so requires."  Id.  Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962). Reasons to deny leave to amend a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," id.; accord Equal Rights

---

[4]     The hand-written portions of Plaintiff's filings do not use a consistent pattern of capitalization.  (See, e.g., Docket Entries 26, 27, 27-1, 30, 32.)  For ease of reading, when quoting Plaintiff's filings, this Memorandum Opinion employs standard capitalization conventions.

Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) ("A
district court may deny a motion to amend when the amendment would
be prejudicial to the opposing party, the moving party has acted in
bad faith, or the amendment would be futile."). "An amendment
would be futile if the amended claim would fail to survive a motion
to dismiss for failure to state a claim pursuant to Federal Rule of
Civil Procedure 12(b)(6)." Syngenta Crop Prot., Inc. v. EPA, 222
F.R.D. 271, 278 (M.D.N.C. 2004).

Defendants have not asserted that Plaintiff seeks leave to
amend in bad faith or with a dilatory motive or that allowing the
amendment would cause undue prejudice. (See Docket Entry 28.)  No
discovery has taken place and the Court neither has entered a
scheduling order nor has set a trial date.  Accordingly,
Plaintiff's Motion for Leave to File Third Amended Complaint
(Docket Entry 27) will be granted and Defendants' arguments
regarding futility (Docket Entry 28 at 5-11) will be addressed in
conjunction with Defendants' Motion to Dismiss, in light of the
facts as pled in the Third Amended Complaint (Docket Entry 27-1).[5]

---

[5]     Plaintiff's instant Fourth Motion to Amend seeks to add
defendants, but indicates that the proposed additional Defendants
"are the same names that [Plaintiff] submitted earlier and they may
have already been added but [he] [had] not recived [sic] any
confirmation[.]"  (Docket Entry 33 at 1.)  Because the Court will
grant Plaintiff's Motion for Leave to File Third Amended Complaint,
which reflects the changes Plaintiff requests in his Fourth Motion
to Amend, the Court will deny the latter Motion as moot.

4

### III.  Motion to Dismiss

#### A.  Factual Background

Plaintiff's Third Amended Complaint, read in a light most favorable to Plaintiff,[6] alleges the following:

On the evening of August 15, 2011, Plaintiff heard knocking at the door of his home "followed by 'Police open the door.'" (Docket Entry 27-1 at 8.)  Before Plaintiff could reach the door, he encountered "several police officers advancing in his direction pointing weapons and flashlights" in the hallway outside his bedroom. (Id.) Plaintiff "emmediatly [sic] raised his hands above his head and froze," but one of the advancing officers struck him "with something long, black and cylendrical [sic] (believed by Plaintiff to be a blackjack)." (Id.)  The officers dragged Plaintiff into the living room, where Defendants McClaskey, K. Childers, and R. Gonsalez "landed a flurry of vicious kicks and stomps to [] Plaintiff['s] sid [sic], back, shoulders, neck and head, causing severe pain, bruising and partially dislodging a tooth that would later have to be removed." (Id. at 8-9.)[7]  At the same time, Defendant Uvaldo Rios, while kicking Plaintiff's legs

---

6    At this stage, "the [C]ourt should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matakari, 7 F.3d 1130, 1134 (4th Cir. 1993).

7    The Third Amended Complaint identifies Defendants McClaskey, Childers, and Gonsalez as police officers employed by the City of Concord. (See Docket Entry 27-1 at 4.)

open, "landed a severe kick to the sensative [sic] area between the scrotum and the anus causing Plaintiff excruciating pain and severe damage." (Id. at 9.)[8] Once the officers had Plaintiff handcuffed, Defendant Rios "snatched Plaintiff to his feet by one arm[,] dislocating his right shoulder causing severe damage and excruciating pain." (Id.)

During these events, Plaintiff "followed all instructions of [Defendant] officers, possesed [sic] no weapon on his person or otherwise possed [sic] any threat to the officers." (Id.) Further, the Third Amended Complaint adds Defendants Kelly Seagraves, Elizabeth Love, G. Bacote, and J. Davis (presumably, along with Defendant Rios, in place of the "Six Unknown Police Officer[s]" named in the Amended Complaint (see Docket Entry 4 at 2)), the four of whom it alleges "where [sic] present and witnessed the [excessive force by] Defendants Childers, Rios, McClaskey and Gonsalez but took no action to intervene or report the incident." (Docket Entry 27-1 at 9-10.)[9]

---

[8]     The Third Amended Complaint identifies Defendant Rios as a police officer employed by the City of Concord. (See Docket Entry 27-1 at 5.) However, Defendants affiliated with the City of Concord have stated that, "[u]pon information and belief, Defendant 'Rios' is Ubaldo Rios, a Special Agent employed by the United States Department of Homeland Security." (Docket Entry 28 at 2 n.1.)

[9]     The Third Amended Complaint identifies Defendants Seagraves and Love as police officers employed by the City of Concord. (See Docket Entry 27-1 at 5.) It further identifies Defendants Bacote and Davis as Deputy Sheriffs employed in Rowan County. (See id. at 6-7.)

The Third Amended Complaint asserts that Defendant officers "had no adequate training regarding entering on [sic] occupied dwelling to serve a warrent [sic] and make on [sic] arrest or reasonable use of force." (<u>Id.</u> at 10.) It also adds as Defendants Chief Guy Smith (of the City of Concord Police Department), Sheriff Kevin Auten (of Rowan County), the City of Concord, and Rowan County, and states that they failed to conduct training or promulgate policies required to prevent unnecessary harm to suspects and that they failed to supervise Defendant officers. (<u>Id.</u>) Based on all the foregoing events, the Third Amended Complaint alleges that Plaintiff suffered physical and emotional trauma, including a decreased ability to perform normal everyday activities, an ongoing testicular infection, erectile dysfunction, as well as ongoing back and shoulder pain. (<u>Id.</u> at 11-12.)

### B. Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint falls short if it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions.  Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice."  Id.

"[D]etermining whether a complaint states on its face a
plausible claim for relief and therefore can survive a Rule
12(b)(6) motion . . . requires the reviewing court to draw on its
judicial experience and common sense."  Francis v. Giacomelli, 588
F.3d 186, 193 (4th Cir. 2009).  Moreover, although the Supreme
Court has reiterated the importance of affording pro se litigants
the benefit of liberal construction, Erickson v. Pardus, 551 U.S.
89, 94 (2007), the United States Court of Appeals for the Fourth
Circuit has "not read Erickson to undermine Twombly's requirement
that a pleading contain more than labels and conclusions,"
Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008)
(internal quotation marks omitted) (applying Twombly in dismissing
pro se complaint); accord Atherton v. District of Columbia Off. of
Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint
. . . 'must be held to less stringent standards than formal
pleadings drafted by lawyers.'  But even a *pro se* complainant must
plead 'factual matter' that permits the court to infer 'more than
the mere possibility of misconduct.'" (quoting Erickson, 551 U.S.
at 94, and Iqbal, 556 U.S. at 679, respectively)).

### *C.  Excessive Force*

Defendants do not contest that Plaintiff's individual capacity excessive force claims against Defendants McClaskey, Childers, Gonsalez, and Rios survive a motion to dismiss. (<u>See</u> Docket Entry 15 at 5-12; Docket Entry 28 at 5-11.)  Furthermore, the facts in the Third Amended Complaint support a claim of excessive force against said Defendants – in that, while in his home and not engaging in criminal activity, Plaintiff neither threatened any officers nor resisted their authority, yet said Defendants subjected him to serious physical injury (Docket Entry 27-1 at 8-9).  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (holding factors relevant to assessment of reasonableness of force to include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest"); <u>see also</u> <u>Anderson v. McCaleb</u>, 480 F. App'x 768, 773 (5th Cir. 2012) (noting that "reasonable use of force for purposes of the Fourth Amendment is not capable of precise definition or mechanical application," but finding that officer "should have known that he could not beat [the plaintiff] after he stopped resisting arrest" (internal quotation marks omitted)); <u>Kane v. Hargis</u>, 987 F.2d 1005, 1008 (4th Cir. 1993) (upholding denial of summary judgment where heavier officer pinned the plaintiff to the ground and pushed her face into pavement, cracking teeth).  Plaintiff's excessive force claims

against Defendants McClaskey, Childers, Gonsalez, and Rios therefore may proceed.[10]

### *D. Illegal Search/Seizure*

The Third Amended Complaint's claim for "General Allegations" under Section 1983 alleges that, "[i]n committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff of . . . the right to be free from unreasonable searches and seizures . . . ." (Docket Entry 27-1 at 12.)[11] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or

---

[10]   This fact largely moots Plaintiff's request for the Court to "look at" Defendant McClaskey's "record." (Docket Entry 36 at 1.)   At any rate, the Court has no obligation to examine information outside the filings in this case or to guess at how any such information may or may not affect Plaintiff's case.   See generally Boomer v. Lewis, 541 F. App'x 186, 191 (3d Cir. 2013) (observing that district court "had no obligation to sift through [materials the plaintiff failed to submit] in deciding [the plaintiff's] motions"); Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders.").

[11]   The Third Amended Complaint abandons the claims in the Amended Complaint for false arrest, illegal taking of personal property, and slander. (Compare Docket Entry 4 at 3-4, with Docket Entry 27-1 at 12-19; see also Docket Entry 15 at 5-10.) Plaintiff's Response to Defendants' Motion to Dismiss also states that "Plaintiff's proposed Third Amended Complaint [] has withdraw [sic] all claims of false arrest, unlaful [sic] search and illegal taking of property in order to move forward with the claims surrounding the excessive force." (Docket Entry 26 at 3 (emphasis added).) Regardless, for reasons set forth in the discussion that follows, the Third Amended Complaint fails to state a plausible claim for illegal search and/or seizure.

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Generally, to satisfy the Fourth Amendment's reasonableness requirement, a search or seizure must be 'accomplished pursuant to a judicial warrant issued upon probable cause.'" Temple v. Johnson, No. 3:09-2655-MBS-JRM, 2010 WL 5136217, at *3 (D.S.C. Nov. 8, 2010) (unpublished) (quoting Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619 (1989)), recommendation adopted, 2010 WL 5136215 (D.S.C. Dec. 9, 2010) (unpublished).

The Third Amended Complaint does not allege that Defendants lacked a warrant or that probable cause failed to support any warrant. (See Docket Entry 27-1 at 8-9.) Furthermore, the Third Amended Complaint concedes that Defendant officers knocked on Plaintiff's door and announced their presence. (Id. at 8.) In addition, the Third Amended Complaint contains no allegations that Defendant officers in fact searched Plaintiff's home at all or seized any of his property. (See id. at 8-9.) Under these circumstances, Plaintiff's unreasonable search and seizure claim fails as a matter of law.

### E. Failure to Train/Supervise

Defendants contend that the Third Amended Complaint "makes only conclusory allegations and fails to articulate any facts which could plausibly demonstrate more than a 'sheer possibility' that [Defendants Smith, Auten, City of Concord, or Rowan County] . . .

failed to properly train [their] Officers regarding excessive force." (Docket Entry 28 at 8.) "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). "[D]eliberate indifference in the context of failure-to-train arises when 'in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights.'" <u>Goodwin v. Beasley</u>, No. 1:09CV151, 2011 WL 238640, at *1 (M.D.N.C. Jan. 24, 2011) (Tilley, S.J.) (unpublished). The Third Amended Complaint fails to allege any facts regarding the training of Defendant officers or any inadequacy as to such training. Accordingly, Plaintiff's failure-to-train claim falls short.

Alternatively, "[s]upervisory officials may be liable under § 1983 if '(1) . . . the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) . . . the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices []"; and (3) . . . there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional

injury suffered by the plaintiff.'" <u>McFadyen v. Duke Univ.</u>, 786 F.

Supp. 2d 887, 963 (M.D.N.C. 2011) (Beaty, C.J.) (quoting <u>Shaw v.

Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994)) (alterations provided by

<u>McFadyen</u>), <u>rev'd in part on other grounds</u>, 703 F.3d 636 (4th Cir.

2012).    Other  recent  authority  has  further  fleshed  out  the

foregoing requirements:

> To meet the first requirement, the plaintiff must proffer
> evidence  that  the  misconduct  has  occurred  on  other
> occasions or is "widespread." [*Shaw*, 13 F.3d at 799.]
> Further, to establish that the supervisor's response is
> deliberately  indifferent,  the  plaintiff  must  show  the
> supervisor's  "'continued  inaction  in  the  face  of
> documented  widespread  abuses,'"  which  is  a  "heavy
> burden." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368,
> 372-73 (4th Cir. 1984)).  Finally, the plaintiff may show
> an  affirmative  causal  link  between  the  supervisor's
> response and the plaintiff's injury when the injury is a
> "natural consequence[ ]" of the supervisor's inaction.
> *Id.* at 800 (quoting *Slakan*, 737 [F.2d] at 376).

<u>Goodwin</u>, 2011 WL 238640, at *1.  The Third Amended Complaint does

not state any such claim because it fails to allege more than one

incident, much less "continued inaction in the face of documented

widespread abuses," <u>id.</u>  (<u>See</u> Docket Entry 27-1 at 10, 13-14.)

### F.  *Excessive Force Against Defendants* *City of Concord and Rowan County*

To the extent the Third Amended Complaint purports to add a

claim of excessive force against Defendants City of Concord and

Rowan County (<u>see</u> <u>id.</u> at 14-15), such claim also cannot proceed.

In order to sustain a § 1983 claim against a local governmental

entity, "it must be shown that the actions of the officers were

unconstitutional and were taken pursuant to a custom or policy of

the entity." <u>Giancola v. State of W. Va. Dep't of Pub. Safety</u>, 830
F.2d 547, 550 (4th Cir. 1987) (citing <u>Monell v. Department of Soc.
Servs.</u>, 436 U.S. 658, 690-92 (1978)).[12]  The Third Amended Complaint
does not allege any facts concerning a custom or policy of
Defendants City of Concord and/or Rowan County, but instead merely
states conclusorily that they "have adopted policies, procedures,
practices or customes [sic] that allow among other things, the use
of excessive force when other more reasonable and less drastic
methods are available."  (Docket Entry 27-1 at 15.)  Furthermore,
"[a] single act of the type here alleged cannot suffice, standing
alone, to establish the existence of such a policy."  <u>Revene v.
Charles Cnty. Com'rs</u>, 882 F.2d 870, 875 (4th Cir. 1989) (citing
<u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985)).

### *G.  Failure to Intervene*

The Third Amended Complaint adds a claim against Defendants
Seagraves, Love, Bacote, and Davis for failure to intervene, in
support of which it alleges that said Defendants "were present at
the aforementioned incident [of excessive force] and failed to take
reasonable steps to protect [] Plaintiff from the other Defendant
officers [sic] excessive force."  (Docket Entry 27-1 at 15.)
According to the Third Amended Complaint, "[a]s a direct and
proximate result of the inaction by Defendants Seagraves, Love,

---

[12]    This same requirement applies to (and requires dismissal
of) any official capacity claim against Defendants McClaskey,
Childers, Gonsalez, and Rios.  <u>See</u> <u>Giancola</u>, 830 F.2d at 550.

14

Bacote, and Davis, Plaintiff suffered both physical and mental injuries . . . ." (<u>Id.</u> at 16.)

"As a general matter, a law officer may incur § 1983 liability only through affirmative misconduct." <u>Randall v. Prince George's Cnty., Md.</u>, 302 F.3d 188, 202 (4th Cir. 2002). However,

> it is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability. . . . The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly.

<u>Id.</u> at 203 (internal citation omitted). In other words, "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." <u>Id.</u> at 204 (internal footnote omitted).

As discussed above, <u>see supra</u> Section III.C., Plaintiff has articulated a plausible claim of excessive force against Defendants McClaskey, Childers, Gonzalez, and Rios. The facts alleged in the Third Amended Complaint also meet the standard set out in <u>Randall</u>, namely that Defendants Seagraves, Love, Bacote, and Davis observed fellow officers violating Plaintiff's constitutional rights and, despite the opportunity, chose not to intervene (<u>see</u> Docket Entry 27-1 at 9-10, 15-16). <u>See</u> <u>Stevenson v. City of Seat Pleasant, Md.</u>,

___ F.3d ___, ___, 2014 WL 660919, at *5-6 (4th Cir. 2014) (finding allegations of bystander liability sufficient where the plaintiffs alleged the defendants "'allow[ed] to be committed . . . unreasonable seizure[s]'"). Plaintiff's individual capacity § 1983 claim against Defendants Seagraves, Love, Bacote, and Davis for failure to intervene therefore survives at this stage of the proceedings.[13]

### *H.  State-Law Claims*

The Third Amended Complaint includes state-law claims of negligence (against all Defendants), negligent supervision (against Defendants Smith, Auten, City of Concord, and Rowan County), conspiracy (against Defendants McClaskey, Childers, Gonsalez, Rios, Seagraves, Love, Bacote, and Davis), and assault (presumably against Defendants McClaskey, Childers, Gonsalez, and Rios). (See id. at 16-19.)  In support of certain aspects of those claims, the Third Amended Complaint describes Defendant Rowan County as "the political subdivision of the state of Nort[h] Carolina responsible for the training and supervision of Defendants Auten, Bacote, and Davis. [] Defendant Rowan County has established or delegated to Defendant Auten the responsibility for establishing and inplementing [sic] policies, practices, procedures and customs used

---

[13]    The absence of factual matter showing that any failure to intervene occurred due to a policy or custom of the entities that employed Defendants Seagraves, Love, Bacote, and Davis warrants dismissal of any official capacity claim.  See Giancola, 830 F.2d at 550.

by deputy sheriffs employed by Rowan County regarding arrests and use of force." (Id. at 7.)

However, North Carolina law does not vest such responsibility in a county, but instead allocates authority over sheriff office personnel to the sheriff. See N.C. Gen. Stat. § 153A-103(1) ("Each sheriff . . . has the exclusive right to hire, discharge, and supervise the employees in his office."). As this Court (per Judge William L. Osteen, Sr.) observed: "Because [the] County did not have final policymaking authority . . ., it cannot be held liable for the conduct of [the sheriff] or [his deputies]." State ex rel. Wellington v. Antonelli, No. 1:01CV01088, 2002 WL 31875504, at *3 (M.D.N.C. Dec. 20, 2002) (unpublished); accord Wiley v. Buncombe Cnty., 846 F. Supp. 2d 480, 486-87 (W.D.N.C.) ("Since Buncombe County by law has no control over the Sheriff's employees . . ., Buncombe County cannot [] be liable for the actions of [the Sheriff] or those of his detention officers . . . ."), aff'd, 474 F. App'x 285 (4th Cir. 2012). Plaintiff's state-law claims against Rowan County thus fail as a matter of law.

The Third Amended Complaint similarly targets Defendant City of Concord as the entity responsible for the actions of its police officers. (See Docket Entry 27-1 at 5-6.) Under North Carolina law, "[i]t is a fundamental rule that sovereign immunity renders this state, including counties and municipal corporations therein, immune from suit absent express consent to be sued or waiver of the

17

right of sovereign immunity." <u>Data Gen. Corp. v. County of Durham</u>,
143 N.C. App. 97, 100, 545 S.E.2d 243, 246 (2001). Moreover, "a
failure to allege waiver of sovereign immunity against a government
entity for tort does not state a claim and should be dismissed."
<u>Collins v. Franklin Cnty.</u>, 861 F. Supp. 2d 670, 676 (E.D.N.C. 2012)
(citing <u>Vest v. Easley</u>, 145 N.C. App. 70, 74, 549 S.E.2d 568, 572
(2001), and <u>Gunter v. Anders</u>, 115 N.C. App. 331, 444 S.E.2d 685
(1994)). In light of the fact that the Third Amended Complaint
does not allege that Defendant City of Concord (or, for that
matter, Defendant Rowan County) waived its sovereign governmental
immunity (<u>see</u> Docket Entry 27-1), Plaintiff's state-law tort claims
against it (or them) cannot proceed. Further, to the extent the
Third Amended Complaint raises state-law claims against Defendant
Smith (or any City of Concord police officer) in an official
capacity, such claims similarly fall short. <u>See</u> <u>Beck v. City of
Durham</u>, 154 N.C. App. 221, 229-30, 573 S.E.2d 183, 190 (2002)
("[T]he doctrine of governmental immunity also bars actions against
public officials sued in their official capacity. The chief of
police . . . [is] considered [a] public official[]." (internal
citation and quotation marks omitted)).

Conversely, North Carolina law expressly permits tort actions
against a sheriff via the sheriff's surety. N.C. Gen. Stat. § 58-
76-5. In other words, "[t]he statutory mandate that the sheriff
furnish a bond works to remove the sheriff from the protective

embrace of governmental immunity, . . . where the surety is joined as a party to the action." Messick v. Catawba Cnty., N.C., 110 N.C. App. 707, 715, 431 S.E.2d 489, 494 (1993), not followed in part on other grounds, Harter v. Vernon, 101 F.3d 334, 342-43 (4th Cir. 1996). Accordingly, to the extent principles of respondeat superior would extend liability to Defendant Auten in his official capacity for negligence of Defendants Bacote and Davis, such a claim may proceed, upon the addition of Defendant Auten's surety, which Plaintiff should have an opportunity to seek. See Clark v. Burke Cnty., 117 N.C. App. 85, 89-90, 450 S.E.2d 747, 749 (1994).[14]

As to the individual capacity state-law claims, "it is settled [under North Carolina law] that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Isenhour v. Hutto, 350 N.C. 601, 609, 517 S.E.2d 121, 127 (1999) (internal quotation marks omitted) (emphasis added). Thus, Plaintiff's negligence/negligent supervision claim(s) against any individual Defendant in his or her individual capacity fails as a matter of law.

On the other hand, Plaintiff's individual capacity assault claim against Defendants McClaskey, Childers, Gonsalez, and Rios

---

[14] Any official capacity negligence claim against any deputy employed by Sheriff Auten is dismissed as redundant. See Peterson v. City of Hickory, No. 5:07-CV-0074-RLV, 2010 WL 4791901, at *4-5 (W.D.N.C. Nov. 17, 2010) (unpublished).

19

survives at this juncture because public official immunity does not extend to intentional torts. <u>See</u> <u>Wells v. North Carolina Dep't of Corr.</u>, 152 N.C. App. 307, 320, 567 S.E.2d 803, 813 (2002). However, the Third Amended Complaint does not identify, and the Court has not found, any North Carolina authority that would recognize a cause of action for bystander liability other than possibly common law negligence.[15] As previously discussed, public official immunity precludes individual capacity state-law negligence claims, <u>see</u> <u>Isenhour</u>, 350 N.C. at 609, 517 S.E.2d at 127. Under these circumstances, any individual capacity state-law claim premised on bystander liability cannot proceed.

Finally, the Third Amended Complaint asserts a state-law conspiracy claim against "Defendants present at the aforementioned [excessive force] incident . . . ." (Docket Entry 27-1 at 18.) In order to make out a claim for common law conspiracy, a plaintiff must allege: "'(1) an agreement between two or more individuals; (2) to do an unlawful act or to do an [sic] lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" <u>Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.</u>, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011) (quoting <u>Privette v. University of N.C. at Chapel Hill</u>, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193

---

[15]     "Federal courts applying state laws should not create or expand a state's common law or public policy." <u>Myers v. Sessoms & Rogers, P.A.</u>, 781 F. Supp. 2d 264, 269 (E.D.N.C. 2011).

(1989)). The Third Amended Complaint offers no factual matter to show the existence of any agreement or common scheme, but instead alleges in conclusory fashion that Defendants "participated in a common design through a concert of action to protect fellow officers, by making false statements or no statements at all regarding the circumstances surrounding the aforementioned incident" (Docket Entry 27-1 at 18). Plaintiff's state-law conspiracy claim therefore fails as a matter of law. See, e.g., Iqbal, 556 U.S. at 678.

## IV.  Plaintiff's Motion for Subpoenas

Plaintiff requests that the Court issue subpoenas for various of his medical records relevant to the injuries alleged in the Third Amended Complaint. (Docket Entry 30.)[16] The Court previously denied an almost identical motion in which Plaintiff asked the Court to compel production of his medical records (Docket Entry 18), "without prejudice to re-filing if appropriate after the Court has resolved [the] Motion to Dismiss and has established a Scheduling Order." (Text Order dated Nov. 7, 2012.) The Court still has not established a Scheduling Order in this case and therefore will again deny relief without prejudice.

---

[16]    Plaintiff made another filing docketed as a "PRO-SE MOTION for medical records." (Docket Entry 32.) That filing, however, merely requests an update on other pending motions. (See id. at 1.) This Order renders that request moot.

# V. Conclusion

No reason exists to warrant denying Plaintiff the opportunity to file his Third Amended Complaint. The Court further concludes that said pleading sets out plausible claims of excessive force, failure to intervene, negligence, and assault against certain Defendants, but fails to make out any claim against Defendants Smith, City of Concord, and Rowan County.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File Third Amended Complaint (Docket Entry 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall docket the proposed Third Amended Complaint (Docket Entry 27-1) as a Third Amended Complaint, shall update the case caption accordingly, and shall send Plaintiff summons forms for Defendants Rios, Bacote, Davis, and Auten.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Docket Entry 14) is **GRANTED IN PART** and **DENIED IN PART** in that:

(1) Plaintiff's individual capacity claims against Defendants McClaskey, Childers, Gonsalez, and Rios for excessive force (under federal law) and assault (under state law) may proceed;

(2) Plaintiff's individual capacity claims against Defendants Seagraves, Love, Bacote, and Davis for failure to intervene (under federal law) may proceed;

(3) Plaintiff's official capacity claim against Defendant Auten for negligence (under state law) based on a theory of

respondeat superior for the inaction of Defendants Bacote and Davis may proceed, subject to the addition of Defendant Auten's surety;

(4) all other claims against Defendants McClaskey, Childers, Gonzalez, Rios, Seagraves, Love, Bacote, Davis, and Auten are dismissed; and

(5) all claims against Defendants Smith, City of Concord, and Rowan County are dismissed.

**IT IS FURTHER ORDERED** that, on or before April 11, 2014, Plaintiff shall prepare and shall deliver to the Clerk properly completed summonses for service as to Defendants Rios, Bacote, Davis, and Auten.[17] Failure by Plaintiff to comply with this Order

---

[17] Plaintiff provided completed summons forms for all proposed new Defendants. (See Docket Entry 33-2.) However, each summons bears the same address (see id. at 1-10), despite the fact that the Third Amended Complaint identifies some Defendants, including Defendants Seagraves and Love, as members of the Concord Police Department, while identifying Defendant Auten as the Sheriff of Rowan County and Defendants Bacote and Davis as Deputy Sheriffs in Rowan County (see Docket Entry 27-1 at 3-7). The Court further takes judicial notice that the address provided by Plaintiff belongs to the Concord Police Department. See http://www.concordnc.gov/departments/police (address located on left side of screen, last viewed Mar. 11, 2014). Therefore, Plaintiff must provide new summonses for Defendants Bacote, Davis, and Auten. Furthermore, as previously noted, it does not appear that Defendant Rios works for the Concord Police Department. (Docket Entry 28 at 2 n.1.) Accordingly, Plaintiff must provide either a new summons with a proper address for service as to Defendant Rios or a notice stating the basis for belief that the Concord Police Department represents a proper service address for Defendant Rios.

will result in dismissal of these Defendants without prejudice pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS FURTHER ORDERED** that, on or before March 25, 2014, counsel for Defendants McClaskey, Childers, and Gonsalez shall file a Notice stating whether said counsel will represent Defendants Seagraves and Love and will accept service of process on their behalf, which the Court then will effect via the CM/ECF system. If said counsel will represent Defendants Seagraves and Love, the Notice should also indicate whether said Defendants consent to have a United States Magistrate Judge conduct any and all further proceedings in this case pursuant to 28 U.S.C. § 636(c).

**IT IS FURTHER ORDERED** that, on or before March 25, 2014, Defendants McClaskey, Childers, and Gonsalez shall answer or otherwise respond to the Third Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Subpoena or Order (Docket Entry 30) is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's Letter Motion (Docket Entry 32) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's Fourth Motion to Amend (Docket Entry 33) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's Letter Motion (Docket Entry 36) is **DENIED**.

<u>     /s/ L. Patrick Auld          </u>
**L. Patrick Auld**
**United States Magistrate Judge**

March 11, 2014