## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAYMOND SANTIAGO GARCIA,     )
                            )
            Plaintiff,     )
                            )
     v.                    )        1:12CV93
                            )
J.P. MCCLASKEY, et al.,      )
                            )
            Defendants.    )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the Motion for Summary Judgment (Docket Entry 66) (the "Summary Judgment Motion") and Motion to Allow Surreply (Docket Entry 78) of Defendant Ubaldo Rios ("Rios"), as well as various "Motions" (Docket Entries 75-2, 75-3, 76, 77) filed by Plaintiff.[1] For the reasons that follow, the Court will deny all of these Motions.

## I. BACKGROUND

Plaintiff alleges that Rios violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as actionable under 42 U.S.C. § 1983, by "us[ing] unreasonable and [e]xcessive force against . . . Plaintiff" in connection with his arrest. (Docket Entry 38 at 1-2, 8-11 (the

---

[1] The parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 31.)

"Third Amended Complaint").)[2] The Summary Judgment Motion contends that "Plaintiff's allegations are completely false and contradicted by the evidence" (Docket Entry 66 at 1), "entitl[ing] [Rios] to qualified immunity from Plaintiff's claim for excessive force" (Docket Entry 67 at 7; see also id. at 12-16).

In support of the Summary Judgment Motion, Rios filed his declaration (Docket Entry 67-1) (the "Rios Declaration"), the Declaration of W. Todd Elmore (Docket Entry 67-2) (the "Elmore Declaration"), intake pictures (a color and black-and-white copy of each) of Plaintiff's face and left side profile that the Cabarrus County Sheriff's Office took the day after Plaintiff's arrest

---

[2] The Court provided a detailed description of the procedural history of this case in a prior order granting in part the Motion to Dismiss of Rios and the United States of America. (Docket Entry 63 at 1-2.) Only Plaintiff's excessive force claim remains against Rios. (See id. at 8-9; see also Docket Entry 37 at 22.) Nevertheless, Plaintiff's Response apparently attempts to assert several other claims against Rios. (Docket Entry 73 at 13-17 (describing claims against all Defendants for federal constitutional violations regarding an alleged illegal search, and for negligence, conspiracy, and assault under North Carolina common law).) To the extent such discussion represents an effort to amend his Third Amended Complaint (see id. at 13 ("Plaintiff suffered 'General and Special' damages as alleged in this Complaint"), Plaintiff has not provided Defendants' written consent to such an amendment or obtained the "[C]ourt's leave," Fed. R. Civ. P. 15(a)(1)-(2) (requiring that, after a party has once amended his pleading as a matter of course, he must receive "the opposing party's consent or the court's leave" to amend the pleading again). Further, Plaintiff cannot amend his Third Amended Complaint through his Response to Rios's Summary Judgment Motion. See Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) ("[A] party may not use its briefs in support of or opposition to summary judgment to amend a complaint." (collecting cases)).

-2-

(Docket Entry 67-3) (the "Intake Pictures"), an inmate medical screening form that Plaintiff completed the day after his arrest (Docket Entry 67-4) (the "Inmate Medical Screening"), and a sick-call request that Plaintiff submitted the day after his arrest (Docket Entry 67-5) (the "Sick-Call Request"). In turn, Plaintiff filed a notarized response (the "Response") setting forth his version of the events during his arrest. (Docket Entry 73.)[3] Rios replied contending that summary judgment remains appropriate. (Docket Entry 74.)[4]

---

[3] The Clerk docketed Plaintiff's Response on March 15, 2016 (see Docket Entry 73 at 1), after his response deadline had passed (see Text Order dated Feb. 2, 2016 (extending response deadline to Feb. 26, 2016); see also Text Order dated Mar. 14, 2016 (denying Plaintiff's fourth motion for extension of time to respond) (the "Fourth Extension Motion"); Text Order dated Feb. 11, 2016 (denying Plaintiff's third motion for extension of time to respond) (the "Third Extension Motion").) Plaintiff, however, dated his Response as signed and submitted from prison on January 22, 2016. (See id. at 18.) Moreover, Plaintiff included with his Response a "Notice and Memorandum" indicating that he did not receive the Court's orders denying his Third Extension Motion and Fourth Extension Motion until March 10, 2016. (See Docket Entry 73-1.) Under these circumstances, the Court, in its discretion, will treat the Response as timely filed for purposes of resolving the Summary Judgment Motion. Moving forward in this litigation, Plaintiff must understand that the mere filing of extension motions does not stay pending deadlines.

[4] After Rios replied to the Response, Plaintiff filed an unnotarized version of his Response (Docket Entry 75), along with a litany of "motions," affidavits, and other filings containing evidence in support of his claim (Docket Entry 75-1 ("Affidavit for Support My Summary Judgment and My Medical Record"); Docket Entry 75-2 ("Motion to Response in Opposition Exhibit 'A' and 'B'"); Docket Entry 75-3 ("Motion in Opposition Exhibit 'C,' 'D' 'E'"); Docket Entry 76 ("Motion to Epitomize and Support the Brief of Summary Judgment"); Docket Entry 76-1 (various exhibits, including

-3-

## II. FACTUAL BACKGROUND

This action arises from Rios's alleged use of excessive force against Plaintiff during his arrest.  (See Docket Entry 38.)  As detailed below, the parties present markedly different versions of the relevant events.

### A.  Rios's Version

According to the evidence submitted by Rios:

Rios works for the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), as a Special Agent with ICE, Homeland Security Investigations ("HSI").  (Docket Entry 67-1, ¶¶ 2-3.)  Rios has "worked in HSI's Narcotics Unit in Charlotte, North Carolina, since April 2007."  (Id. ¶ 3.)  In that role, Rios works to "detect, deter, and dismantle narcotics trafficking organizations."  (Id.)

---

an alleged photo of Plaintiff's back, several "Witness" statements, copies of Plaintiff's medical and dental records, a copy of Plaintiff's arrest warrant, copies of two search warrants, and an alleged copy of a police statement); Docket Entry 77 ("Motion to 'Add' my Last X-Rays" (the "Extension Motion")).  Plaintiff's Extension Motion asks the Court to stay the case pending Plaintiff's transfer.  (Docket Entry 77 at 1.)  Because the Extension Motion provides no grounds justifying a stay (see id.), the Court will deny that request.  Moreover, in response to Plaintiff's filings, Rios filed his Motion to Allow Surreply (Docket Entry 78), along with a supporting brief (Docket Entry 79) and three exhibits (Docket Entries 78-1 through 78-3).  Because Plaintiff's Response (Docket Entry 73) provides sufficient grounds to deny Rios's Summary Judgment Motion (Docket Entry 66), the Court will not consider the parties' additional filings (Docket Entries 75, 75-1, 75-2, 75-3, 76, 76-1, 78, 78-1, 78-2, 78-3, 79).  As a result, those filings labeled as "Motions" (Docket Entries 75-2, 75-3, 76, 78) will be denied as moot.

"In May 2011, the Rowan County Sheriff's Office began investigating a Mexican cocaine trafficking organization [operating] in Rowan and Cabarrus counties." (Id. ¶ 4; Docket Entry 67-2, ¶ 4 (Elmore Declaration).) During the investigation, law enforcement officers (the "LEOs") searched two residences "involved in storing and distributing cocaine," and "found multiple kilograms of cocaine, a cocaine press, drug paraphernalia, $324,000 in U.S. currency, and records showing a distribution paper trial." (Docket Entry 67-1, ¶¶ 4-5; Docket Entry 67-2, ¶¶ 4-5.) The Concord Police Department subsequently received information from a confidential informant that Plaintiff was hiding at 642 Wyoming Drive and "possessed a handgun." (Docket Entry 67-1, ¶ 6; Docket Entry 67-2, ¶ 6.)

HSI Criminal Investigator Todd Elmore ("Elmore") and other LEOs conducted a "knock-and-talk" at the 642 Wyoming Drive residence. (Docket Entry 67-2, ¶ 6 (internal quotation marks omitted); see also Docket Entry 67-1, ¶ 6.)[5] During the knock-and-talk, Rios held a containment position behind the residence to prevent anyone from escaping through a rear window or door. (Docket Entry 67-1, ¶ 7; see also Docket Entry 67-2, ¶ 11.) While Rios maintained his position behind the residence, Elmore and the other LEOs knocked on the front door and heard someone running

---

[5] Subsequent to the events at issue in this action, Elmore retired from his position with HSI. (Docket Entry 67-2, ¶ 3.)

inside. (Docket Entry 67-2, ¶ 7.) Upon forcing open the door, Elmore and the LEOs "saw [Plaintiff] running down the hallway from the living area towards the back bedroom." (Id.) Based on the informant's tip that Plaintiff possessed a handgun, Elmore and the LEOs pursued, tackled, and handcuffed Plaintiff, then sat him in a chair in the living room. (Id.) According to Elmore, neither he nor any of the other LEOs kicked, punched, stomped, or used unnecessary force against Plaintiff. (Id.)

After Plaintiff's apprehension, Elmore summoned Rios to interpret for Plaintiff. (Id. ¶ 8; see also Docket Entry 67-1, ¶ 11.) "[Rios] entered the residence through the back door" (Docket Entry 67-1, ¶ 9) and "read [Plaintiff] his *Miranda* rights in Spanish" (Docket Entry 67-2, ¶ 8; see also Docket Entry 67-1, ¶ 12), which Plaintiff waived (Docket Entry 67-1, ¶ 11; Docket Entry 67-2, ¶ 10). Plaintiff consented to a search of the residence and answered Elmore's questions (with Rios acting as interpreter) for about 25 minutes. (Docket Entry 67-1, ¶¶ 10-11; Docket Entry 67-2, ¶¶ 9-10.) The search uncovered $24,939 in U.S. currency and a handgun. (Docket Entry 67-1, ¶ 10; Docket Entry 67-2, ¶ 9.) "The handgun was found in the back bedroom towards which [Plaintiff] had been running." (Docket Entry 67-2, ¶ 9.)

With regard to the apprehension and alleged injury of Plaintiff, Elmore's Declaration states that "Rios did not assist in arresting [Plaintiff] or in searching or clearing the residence"

(<u>id.</u> ¶ 11), and that "[Elmore] did not observe . . . Rios have any physical contact with [Plaintiff]" (<u>id.</u> ¶ 13). Elmore's Declaration further avers that Rios did not kick Plaintiff between his legs or dislocate Plaintiff's right shoulder. (<u>Id.</u>) Moreover, Elmore and Rios both have asserted that, during questioning, Plaintiff possessed no visible or apparent injuries, and made no complaints of injuries. (<u>Id.</u> ¶ 12; Docket Entry 67-1, ¶ 13.)

Rios also has argued that the Intake Pictures (Docket Entry 67-3) support his version of the arrest, as they do not reveal any apparent injuries to Plaintiff's face or head. (<u>See</u> Docket Entry 67 at 5.) Likewise, Rios has contended that the Inmate Medical Screening, which consists of 34 questions regarding Plaintiff's health, medical conditions, medications, and injuries (Docket Entry 67-4), further corroborates Rios's version of the arrest. (Docket Entry 67 at 5.) In that regard, Plaintiff responded in the negative to the following questions:

> 8. Do you have obvious pain, bleeding or other symptoms requiring emergency services?
>
> . . .
>
> 25. Fainted, had seizures or a recent head injury?
>
> . . .
>
> 28. Does the inmate have painful dental condition?
>
> . . .
>
> 31. Do you have other medical problems?

-7-

(Docket Entry 67-4 at 2-4 (indicating that Plaintiff answered all 34 questions and signed the completed Inmate Medical Screening).) Moreover, the Sick-Call Request that Plaintiff allegedly made the day after his arrest states that "[a]pproximately 20 yrs ago [he] was kicked by a horse and because of the incident [he] [has] a cracked disc in [his] lower back." (Docket Entry 67-5 at 2.)

## B. Plaintiff's Version

Plaintiff recounts a different version of the events surrounding his arrest:

On August 15, 2011, Rios and various other LEOs visited the 642 Wyoming Drive residence, broke in the front door, and entered without consent. (Docket Entry 73, ¶¶ 20-21.) At the time of their entry, Plaintiff was in the bathroom located in the master bedroom. (Id. ¶ 20.) Upon hearing the noise, Plaintiff immediately proceeded out of the bathroom, through the master bedroom, and towards the front door. (Id.) When Plaintiff opened the master bedroom door that led to the hallway, several LEOs pointing weapons and flashlights advanced in his direction. (Id. ¶ 21.) Plaintiff became startled and instantly raised his hands above his head and froze. (Id.)

Rios then immediately struck Plaintiff with something long, black, and cylindrical, which Plaintiff describes as a blackjack. (Id.) The force and pain of that blow knocked Plaintiff to the floor. (Id.) Rios dragged Plaintiff, face down, by his hair,

-8-

through the hallway and into the living room.  (Id. ¶ 22.)  Other
LEOs watched and laughed as Rios and "[a]nother partner" kicked
Plaintiff.  (Id. ¶ 23.)

During the beating, Rios landed a particularly severe kick to
the sensitive area between Plaintiff's scrotum and anus, tearing
and breaking tendons, causing Plaintiff excruciating pain and
severe damage, and requiring an operation.  (Id. ¶¶ 24, 32.)
Another of Rios's kicks and/or stomps struck Plaintiff in the head,
requiring removal of a tooth.  (Id. ¶ 35.)[6]  Additionally, a blow
to Plaintiff's back, landed by Rios and/or his partner, fractured
a disc on Plaintiff's left side.  (Id. ¶ 33.)

Rios thereafter violently handcuffed Plaintiff's arms behind
his back and "snatched" Plaintiff to his feet by one arm,
dislocating his right shoulder and causing excruciating pain and
severe damage.  (Id. ¶ 25.)  At all times before, during, and after
the incident, Plaintiff followed all instructions, possessed no
weapon on his person, and posed no threat to the LEOs' safety.
(Id. ¶ 26.)  The alleged beating caused Plaintiff to urinate heavy
blood for over one week, impaired his ability to exercise, and

_____

[6] The Third Amended Complaint alleges that "Det McClaskey, Det
Childer, and Det Gonsalez intentional[l]y, maliciously and/or
recklessly landed a flurry of vicious kicks and stomps to . . .
Plaintiff['s] sid[e], back, shoulders, neck and head causing severe
pain, bruising and partially dislodging a tooth that would later
have to be [r]emoved."  (Docket Entry 38, ¶ 25.)  In contrast,
Plaintiff's Response states that Rios landed the blow that
dislodged Plaintiff's tooth.  (See Docket Entry 73, ¶ 35.)

-9-

resulted in trauma, nightmares causing a lack of sleep, emotional distress, mental anguish, and ongoing back and shoulder pain. (Id. ¶¶ 30-32, 34, 36.)

### III. ANALYSIS

The Court should grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This standard requires more than a mere scintilla of evidence. American Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009). In considering a motion for summary judgment, "[t]he facts and inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, and this party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (internal quotation marks and brackets omitted). The party seeking summary judgment has the initial burden to show an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party then must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations

-10-

or denials in his pleading. <u>Anderson</u>, 477 U.S. at 248. In regard to a motion for summary judgment, a party need not submit evidence in an admissible form, but the evidence must otherwise qualify for admission at trial. <u>Celotex Corp.</u>, 477 U.S. at 324.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Brown v. Gilmore</u>, 278 F.3d 362, 366-67 (4th Cir. 2002) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). "The Supreme Court has directed that 'qualified immunity questions should be resolved at the earliest possible stage of a litigation.'" <u>Smith v. Reddy</u>, 101 F.3d 351, 357 (4th Cir. 1996) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 n.6 (1987)). Nevertheless, "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." <u>Vathekan v. Prince George's Cty.</u>, 154 F.3d 173, 180 (4th Cir. 1998) (internal quotation marks omitted). Qualified immunity requires a two-prong analysis. <u>Williams v. Ozmint</u>, 716 F.3d 801, 805 (4th Cir. 2013). The Court must consider (1) "whether a constitutional violation occurred," and (2) "whether the right violated was 'clearly established' at the time of the official's conduct." <u>Id.</u> The Court may exercise its discretion when deciding which of the

-11-

two prongs to consider first.  <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).[7]

Under the facts averred by Plaintiff, Rios used excessive force.  "It is clearly established that citizens have a Fourth Amendment right to be free from unreasonable seizures accomplished by excessive force."  <u>Valladares v. Cordero</u>, 552 F.3d 384, 388 (4th Cir. 2009).  "Excessive force [arrest] claims are analyzed under the Fourth Amendment's 'objective reasonableness' standard."  <u>Gilmore</u>, 278 F.3d at 369 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989)).  Under this standard, the Court must determine "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force."  <u>Elliott v. Leavitt</u>, 99 F.3d 640, 642 (4th Cir. 1996) (citing <u>Graham</u>, 490 U.S. at 396-97).

Recognizing that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving," the Court must judge "[t]he 'reasonableness' of a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  <u>Graham</u>, 490 U.S. at 396-97.  "The intent or motivation of the officer is irrelevant; the question is

---

[7] Rios only has addressed the first prong of the qualified immunity analysis.  (<u>See</u> Docket Entry 67 at 8-16.)  Accordingly, the Court will not discuss the second prong.

whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott, 99 F.3d at 642 (citing Graham, 490 U.S. at 396-97). Proper application of the objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Additionally, "[t]he extent of the plaintiff's injury is also a relevant consideration." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). When applying these factors, the Court must determine whether the totality of the circumstances justified the particular use of force in effecting the seizure. Id. at 527-28.

Rios argues that his conduct did not rise to the level of a constitutional violation, and, thus, that qualified immunity shields his actions. (Docket Entry 67 at 9-16.) Rios's argument rests primarily on his version of events from the arrest, as supported by the Elmore Declaration. (See id. at 3-5, 14; see also Docket Entry 67-1 (Rios Declaration); Docket Entry 67-2 (Elmore Declaration).) However, on summary judgment, the Court must consider the facts in the light most favorable to Plaintiff as the nonmoving party. See Henry, 652 F.3d at 531.

-13-

Rios attempts to avoid this rule by relying on Scott v. Harris, 550 U.S. 372 (2007). (See Docket Entry 67 at 12-13.) In that case, the Supreme Court addressed the effect of an uncontested videotape on a motion for summary judgment. Scott, 550 U.S. at 378-79. There, the plaintiff filed suit under Section 1983 alleging that a police officer used "excessive force resulting in an unreasonable seizure under the Fourth Amendment" by intentionally wrecking the plaintiff's car to end a high-speed chase. Id. at 375-76. In resolving the summary judgment issue, the Supreme Court focused on the existence of the uncontested video recording of the car chase that contradicted the plaintiff's version of events. Id. at 378-80. Relying on that video recording, the Supreme Court rejected the plaintiff's version of events for purposes of analyzing the motion for summary judgment, concluding that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380.

This case does not resemble Scott. Here, the evidence before the Court consists mainly of affidavits detailing contradictory versions of Plaintiff's arrest (compare Docket Entries 67-1, 67-2, with Docket Entry 73), and Rios has provided no video footage or

-14-

other such evidence that requires acceptance of his account.[8] Although the Intake Pictures, Inmate Medical Screening, and Sick-Call Request tend to undermine Plaintiff's contention that he suffered major injuries from the force that Rios allegedly used during the arrest, those submissions, even when coupled with the Rios Declaration and Elmore Declaration, do not provide the type of objective proof necessary for the Court to completely discount Plaintiff's version of the arrest. Simply put, Rios's submissions do not rise to the level of the video evidence that the Supreme Court deemed conclusive in Scott. See Stout v. Reuschling, Civ. Act. No. 14-1555, 2015 WL 1461366, at *10 (D. Md. Mar. 26, 2015) ("The evidence offered in this case is simply not on equal foo[t]ing with the type of evidence that documented the incident with the level of certain[t]y and reliability as the videotape[] in Scott . . . . Where, as here, the parties offer dueling affidavits with substantially different accounts, Scott instructs that 'in

---

[8] The Court notes that even video footage of the relevant events often does not prove dispositive at summary judgment. See, e.g., Kane v. Beaufort Cty. Sheriff's Dep't, Civ. Action No. 9:14-508, 2015 WL 404570, at *5 (D.S.C. Jan. 29, 2015) (determining that, "because certain relevant details of the encounter are not visible on the video available, and because they are not offered as true by the [p]laintiff, the [c]ourt cannot rely on [the] [d]efendants' description of the events for purposes of its summary judgment analysis"); Godfrey v. Faulkner, No. 7:13CV454, 2015 WL 302841, at *4 (W.D. Va. Jan. 23, 2015) (concluding that video footage of the arrest "is not so entirely inconsistent with [the plaintiff]'s account of the officers' conduct that [the court] can completely discount his version of events").

such [a] posture, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.'" (quoting <u>Scott</u>, 550 U.S. at 378)).

Rios cites to a number of cases for the proposition that "government officials are entitled to summary judgment on qualified immunity when the plaintiff's allegations are not supported by the evidence." (Docket Entry 67 at 14; <u>see also id.</u> at 14-16 (listing cases).) Those cases fall into three separate categories, the general holdings of which do not specifically apply to this case. In the first group of cases that Rios cites, courts credited the plaintiff's version of the facts only to the extent consistent with record video evidence. <u>See</u> <u>Garris v. Averett</u>, Civ. Action No. 5:13-CT-3030-FL, 2014 WL 4727087, at *6 (E.D.N.C. Sept. 23, 2014) (noting that the unchallenged videotape clearly refuted the plaintiff's account); <u>Croom v. Fullen</u>, No. 7:09CV399, 2010 WL 3783435, at *4 (W.D. Va. Sept. 28, 2010) (observing that "the video contradicts [the] plaintiff's assertion[s]"), <u>aff'd</u>, 409 F. App'x 711 (4th Cir. 2011); <u>Randolph v. Jeffery</u>, Civ. Action No. 1:08-3492-MBS-SVH, 2010 WL 3609014, at *3 (D.S.C. Aug. 3, 2010) (relying in part on video evidence to conclude that "[the] [p]laintiff was [not] choked during the use of force," and the "[d]efendants [did not] use[] greater force than was necessary"), <u>recommendation adopted</u>, 2010 WL 3608986 (D.S.C. Sept. 10, 2010); <u>Wilson v. Hall</u>,

-16-

No. 7:09CV503, 2010 WL 2038907, at *7 (W.D. Va. May 20, 2010)
(explaining that the plaintiff's "allegations . . . are blatantly
contradicted by the unchallenged video recording of the events"
(internal quotation marks omitted)).  Here, however, Rios submitted
no video recording of Plaintiff's arrest.   That materially
distinctive fact prevents reliance on Rios's first category of
cases.

In the second group of cases that Rios provides, courts held
that even the plaintiffs' allegations justified the particular uses
of force applied, in light of the totality of the circumstances as
reasonably perceived by the officers.   See Mack-Bey v. Hicks, No.
5:11CV122-RJC, 2015 WL 5730757, at *4 (W.D.N.C. Sept. 30, 2015)
(observing that "[the] [p]laintiff's affidavit, and other evidence
of record, no doubt confirms the existence of a violent struggle
but the evidence suggests the need for the use of force was in
direct response to [the] [p]laintiff's refusal to submit to lawful
orders");[9] Summerville v. Shields, No. 1:12CV1505, 2013 WL 4509515,

_____

[9] The undisputed evidence in Mack-Bey established that
multiple officers "were themselves seriously injured as [a] result
of [the plaintiff's] refusal to . . . stop resisting."   Mack-Bey,
2015 WL 5730757, at *5 n.6.   In this case by contrast, the record
contains no such undisputed evidence of resistance by Plaintiff
and, as discussed above, his detailed description of the arrest
definitively denies any resistance.   To the extent the court in
Mack-Bey granted summary judgment for the officers based (1) on the
fact that numerous officers contradicted the plaintiff's account of
how many baton strikes occurred and/or (2) the absence of evidence
that Plaintiff complained of injuries from the alleged grabbing of
his testicles by one or more officers, this Court declines to

-17-

at *3 (E.D. Va. Aug. 22, 2013) (concluding that, under "the totality of the circumstances [the defendant] faced, his actions were not objectively unreasonable" because, "[f]rom [his] perspective, he could only restrain [the] plaintiff by employing the taser and pepper spray and using the baton, and the alleged fact that [the] plaintiff's mental condition made [the plaintiff] unaware that he had the scissors and unable to release them is irrelevant to the reasonableness analysis"), aff'd, 554 F. App'x 212 (4th Cir. 2014); Britt v. Raymes, No. 5:07-CT-3140-BO, 2013 WL 1091047, at *7 (E.D.N.C. Mar. 15, 2013) (noting that the defendants reasonably perceived the position of the plaintiff's weapon as threatening where the plaintiff acknowledged that he was holding a weapon, and concluding that the plaintiff's allegation that he was shot from point-blank range was specifically refuted by "[t]he expert opinion, the medical records, and reports"), aff'd, 538 F. App'x 343 (4th Cir. 2013);[10] Benson v. DeLoach, Civ. Action No. 8:09-41-GRA-BHH, 2009 WL 3615026, at *7 (D.S.C. Oct. 28, 2009) (ruling that "[t]he evidence presented, including the [p]laintiff's

---

engage in any such weighing of evidence for purposes of resolving the instant Summary Judgment Motion.

    [10] To the extent Britt involved judicial adoption of the defendants' evidence over the plaintiff's version of events, the Court views the defense evidence submitted in this case to differ sufficiently in degree of objective conclusiveness as to preclude judicial rejection of Plaintiff's version of events at the summary judgment stage.

own allegations and statements . . ., plainly shows that at the time of his arrest, [the plaintiff] actively resisted being taken into custody and refused to cooperate," and therefore "it was not unreasonable for the [d]efendants to believe that the [p]laintiff posed a threat of serious physical harm to them" requiring the use of force applied (emphasis added)).

In this case, when viewing the totality of the circumstances from the perspective of a reasonable officer on the scene, the facts alleged in Plaintiff's Response do not establish as a matter of law that Rios used reasonable force. Specifically, Plaintiff alleges that he complied with all orders and presented no threat of harm to the LEOs during his arrest, but that they proceeded to beat and kick him anyway. (Docket Entry 73, ¶ 26.) That distinction renders reliance on Rios's second category of cases improper here.

The third group of cases that Rios cites involved circumstances where, when viewed in the light most favorable to the plaintiff, the facts alleged did not establish a constitutional violation. See Johnson v. Caudill, 475 F.3d 645, 647 (4th Cir. 2007) (ruling that, "[b]ecause a reasonable official in [the defendant]'s position would not have considered the termination to violate [the plaintiff]'s clearly established constitutional rights, . . . [the defendant] [is] entitled to qualified immunity"); Couch v. Jabe, No. 7:11-CV-34, 2012 WL 3043105, at *5-*6 (W.D. Va. July 25, 2012) (holding that the plaintiff-inmate

-19-

failed to show that the defendants' conduct of requiring each prisoner to file a personal property request form for preapproval of mail ordered books violated his First Amendment rights); Woodside v. Redmond, No. 5:04CV95-V, 2007 WL 4568975, at *12 (W.D.N.C. Dec. 19, 2007) (applying qualified immunity as alternate basis for summary judgment because "as a matter of law . . . the [plaintiff's] specific allegations of deliberate indifference [to his serious medical need] do not constitute a violation of a clearly established constitutional right" (internal quotation marks omitted)). Here, by contrast and as explained below, Plaintiff has alleged sufficient facts to support a claim of excessive force against Rios. Therefore, this third set of cases does not entitle Rios to summary judgment.

In sum, "[i]t is not [the Court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe. Those tasks are for the jury." Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991) (citation omitted). Rios's citation of Scott and the three, above-discussed groups of cases does not alter that conclusion given the circumstances presented. Accordingly, the Court will analyze the Summary Judgment Motion under Plaintiff's sworn version of events.

Under the facts described by Plaintiff, a reasonable jury could find that Rios used excessive force against Plaintiff. The

-20-

first <u>Graham</u> factor (the severity of the crime at issue) favors Rios. At the time of the arrest, Rios believed that Plaintiff was involved in a cocaine trafficking organization and possessed a firearm. (<u>See</u> Docket Entry 67-1, ¶¶ 4-6; <u>see also</u> Docket Entry 67-2, ¶¶ 4-6.) Suspicion of drug trafficking and firearm possession tip this factor in Rios's favor. <u>See, e.g.</u>, <u>Whitebey v. Sarrge</u>, No. 7:11CV105, 2011 WL 6323134, at *11 (W.D. Va. Dec. 16, 2011) (concluding that the first <u>Graham</u> factor weighed against the plaintiff where law enforcement officers suspected him of drug trafficking and possessing a firearm at the time of his arrest).

The second <u>Graham</u> factor (whether the suspect posed an immediate threat to the safety of officers or others) heavily favors Plaintiff. According to Plaintiff, he immediately raised his hands above his head and froze when he first saw the LEOs advancing towards him. (Docket Entry 73, ¶ 21.) Plaintiff further has averred that, while he stood stationary with his hands above his head, Rios struck him with something long, black, and cylindrical, which knocked him to the floor. (<u>Id.</u>) Next, while Plaintiff remained face down on the floor, Rios dragged Plaintiff by his hair into the living room and kicked him numerous times. (<u>Id.</u> ¶¶ 22-24.) Plaintiff further has insisted that, during the arrest, he obeyed all instructions and did not possess a weapon on his person. (<u>Id.</u> ¶ 26.) Accepting these assertions, Plaintiff posed little danger to Rios or others during his arrest.

-21-

Likewise, the third <u>Graham</u> factor (whether the suspect resisted or attempted to flee) also favors Plaintiff. Plaintiff reportedly complied with all instructions and took no actions to resist arrest. (<u>Id.</u> ¶¶ 21-26.) In addition, Plaintiff has claimed significant injuries as a result of Rios's alleged attack, including torn and broken tendons between his legs, a fractured disc in his back, long-lasting back and shoulder pain, and a dislodged tooth. (<u>Id.</u> ¶¶ 32-33, 35-36.)

Given the <u>Graham</u> factors and Plaintiff's factual averments, the Court concludes that Rios's alleged actions do not, as a matter of law, qualify as reasonable under the circumstances. <u>See</u> <u>Smith v. Ray</u>, 781 F.3d 95, 106 (4th Cir. 2015) (affirming denial of the defendant's motion for summary judgment based on qualified immunity where "the weakness of the *Graham* factors was so apparent that any reasonable officer would have realized that the force [allegedly] employed was excessive").[11] Therefore, the Court will deny the Summary Judgment Motion.

_____

[11] "[The] conclusion that [Rios] is not entitled to qualified immunity at this stage is no indictment of [Rios], who denies many of the facts on which [Plaintiff]'s claim is based." <u>Ray</u>, 781 F.3d at 106. Most significantly, Rios contends that he provided no assistance, and was not even present, during Plaintiff's arrest. (Docket Enter 67-1, ¶¶ 6, 12.) "However, . . . it is the jury's role, not [the Court's], to decide whose version of facts is correct." <u>Ray</u>, 781 F.3d at 106.

## IV. CONCLUSION

Plaintiff has come forth with sufficient factual support to create a genuine dispute of material fact regarding his claim that Rios used excessive force during Plaintiff's arrest.

**IT IS THEREFORE ORDERED** that Rios's Summary Judgment Motion (Docket Entry 66) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Extension Motion (Docket Entry 77) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Response in Opposition Exhibit "A" and "B" (Docket Entry 75-2), Motion in Opposition Exhibit "C," "D" "E" (Docket Entry 75-3), and Motion to Epitomize and Support the Brief of Summary Judgment (Docket Entry 76), and Rios's Motion to Allow Surreply (Docket Entry 78), are all **DENIED AS MOOT.**


          /s/ L. Patrick Auld
          **L. Patrick Auld**
   **United States Magistrate Judge**

May 18, 2016